IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PATRICIA RUYBAL,

      Plaintiff,

v.                                                              CIV 07-1060 KBM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

# MEMORANDUM OPINION & ORDER

    Plaintiff Patricia Ruybal suffered from knee pain for many years and previously worked as an interior decorator and in various managerial and delivery positions.  In 2004, she applied for Disability and Supplemental Security Income benefits alleging an April 2, 2004 onset of disability due to knee pain.  Her last position as a florist delivery person did not qualify as substantial gainful activity.  Soon after the Administrative Law Judge "(ALJ") hearing, Ruybal underwent bilateral knee replacements.  *See, e.g., Administrative Record* ("*Record*") at 15, 17, 72-78, 86-88, 129, 283, 297, 350.

    On July 19, 2006, ALJ Joanne S. Birge found that Plaintiff had several severe

impairments that did not meet a Listing[1] and that she could perform a limited range of light work that involved no pushing and pulling with her lower extremities and only occasional crawling and handling, fingering, feeling. *Record* at 18. With the aid of the testimony from a vocational expert ("VE"), ALJ Birge identified three jobs Plaintiff can perform – message courier, laundry folder, and parking lot attendant. *Id.* at 21. ALJ Birge then issued two alternative bases for finding Plaintiff not disabled at Step 5. She denied benefits first because the three jobs identified by the VE exist in "significant numbers in the national economy" and second, because under the framework of Medical-Vocational Rule 201.18, Plaintiff met the criteria and her limitations "do not significantly erode the occupational base or eliminate all work at the light or sedentary levels of exertion." *Id.* at 21.

Because the Appeals Council denied review on August 29, 2007, the ALJ's decision is final and the decision under review. *See, e.g., id.* at 5; *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) ("Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal.").

---

[1] ALJ Birge found the severe impairments to be: degenerative joint disease, osteoarthritis of both knees, obesity, and insulin-dependent diabetes. She found that Plaintiff's elbow pain was a nonsevere impairment because there were no limitations associated with it. *Record* at 17. She specifically mentioned Listing 1.02 and discussed, but did not cite, Listing 9.08 for diabetes. *See id.* at 17-18.

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. *See Docs. 8, 10.* The entire record has been meticulously reviewed. *E.g., Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005). Plaintiff moves to reverse and remand on a number of grounds relating to the Appeals Council decision, the ALJ's application of the treating physician rule, and the ALJ's decision about Plaintiff's credibility. *See Doc. 16.* For the reasons below, I deny the motion.

# I.  Standard of Review

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. "'Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quoting *Grogan v. Barnhart,* 399 F.3d 1257, 1261-62 (10th Cir. 2005)). I can neither reweigh the evidence nor substitute my judgment for that of the agency. *Hamlin v. Barnhart,* 365 F.3d 1208, 1214 (10th Cir. 2004); *see also Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004). Thus,

> "The possibility of drawing two inconsistent conclusions
> from the evidence does not prevent an administrative

> agency's findings from being supported by substantial
> evidence." . . .   We may not "displace the agenc[y's]
> choice between two fairly conflicting views, even though
> the court would justifiably have made a different choice
> had the matter been before it *de novo.*"

*Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007).

# II.  Analysis

## A.  *Post-Decision Award Of Benefits Is Immaterial*

Plaintiff notes that she filed a new application after the ALJ's decision and
was awarded disability benefits as of July 25, 2006, "just six . . . days after the ALJ's
decision in this case." *Doc. 16* at 26.  She makes this observation in connection
with her argument that the "ALJ's credibility assessment is unsupported." *Id.*  I find
the post-decision award of benefits is immaterial for the purposes of this appeal. *See*
*Hardesty v. Barnhart,* CIV 03-1114 KBM (Doc. 15 at 9 & n. 5) (and cases cited
therein); *see also, e.g., Presley v. Commissioner of Social Sec.,* 23 Fed. App'x 229, 231
(6th Cir. 2001) ("Presley states that he was awarded disability benefits by ALJ
White.  The Commissioner's brief indicates that Presley was awarded supplemental
security income benefits as of March 19, 1998.  However, the subsequent award of
benefits is not relevant to his condition before January 6, 1998, the date of this
current decision.  *See Wyatt v. Secretary of Health and Human Servs.,* 974 F.2d 680,

685 (6th Cir. 1992).").[2]

_____

[2]   The Court is aware that some courts hold a finding of disability shortly after a finding of not disabled is new and material evidence.  Plaintiff _does not_ argue the subsequent award constitutes new and material evidence.  _Compare Doc. 16_ at 7-15 (items that constitute new evidence, _with id._ at 26 (mention of subsequent award of benefits in credibility challenge).  Even if the aforementioned holding were the law in the Tenth Circuit, it would not alter the outcome here because the only suggestion in the record is that the subsequent award Plaintiff was based on a different "condition" – her inability to return to work based on further limitations after surgery.  _See Record_ at 133A (post-hearing submission of letter by claimant's sister who stated that claimant was slowly recovering from surgery as of June 2006 and that "her physician is not definite that she will make a full recovery"); _id._ at 20 (ALJ's July 2006 discussion of the sister's letter); _id._ at 342 (September 2006 post-surgery mental impairment examination noting "[d]ifficulty recovering from knee surgery and having depression).  Plaintiff's surgical and post-surgery records were not submitted to ALJ Birge (despite her discussion with the representative about doing so) or the Appeals Council or this Court.  _See id._ at 350-51 ("we should determine first .. . whether or not the Claimant is or has been disabled to date. . . . if I find that she's not been disable, then you have a year to move to re-open that [after the surgery] knee replacement . . . is rarely totally or permanently disabling . . . even though she would say be off her feet six months, eight months . . . if it comes out  . . eight, nine, ten months after the surgery it still looks like you're not going to be on your feet in twelve months, then Ms. Cordova, you can move to re-open the prior application.  You'll still be within one year and them we can consider that without you filing a whole new application."); _see also Hodge v. Astrue,_ 2008 WL 4561614 (D. Minn. 2008) (Magistrate Judge declined to consider subsequent grant of benefits because he had "no evidence . . . to determine the nature of the new evidence that was submitted to the Commission in connection with Hodge's subsequent application for benefits" and thus Magistrate Judge could not determine whether the subsequent decision was new and material), _rv'd,_ 2008 WL 4561601 (D. Minn. 2008) (District Judge held that because the subsequent grant of benefits was submitted "to the Appeals Council, which considered and rejected its relevancy," the subsequent award of benefits should have been considered by the Magistrate Judge); _compare Hall v. Astrue,_ 2008 WL 5455720 at * 12 (W.D. Va. 2008) ("The Commissioner's decision regarding Hall's subsequent disability application granted him benefits as of the date after the ALJ's unfavorable decision at issue in this case.  Hall claims, and the Commissioner does not contest, that the Commissioner found him to be disabled on June 20, 2007, based on the same medical records that were before the ALJ on the initial application. . . . Thus, the Commissioner's subsequent decision is highly relevant to the determination of disability in this case.") _and Wetselline v. Astrue,_ 2008 WL 1994930 (W.D. Okla. 2008) ("Although the record does not contain the medical evidence which was presented in support of the subsequent application, plaintiff states that [it] was based on medical evidence very similar to the first application" and the same was "obvious" to the court given the "nature of the subsequent disability determination").

## B.  Appeals Council Issues

Plaintiff's attorney was appointed after the ALJ issued her decision.  *See Record* at 34, 346.  He submitted a number of items to the Appeals Council, all save one of which related to an alleged disabling mental condition.  *See, e.g., id.* at 8, 24, 301-45.  The Appeals Council stated that it "considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. . . . this information does not provide a basis for changing the Administrative Law Judge's decision."  *Id.* at 5-6; *see also id.* at 8 (listing all of the additional evidence submitted by Plaintiff).

Plaintiff asserts that the Appeals Council erred in using this "boilerplate" language because it does not show whether it considered the new evidence.  *See Doc. 16* at 7, 13-15.  I have previously rejected this same argument by this same attorney, based on the same cases.[3]  I further note that the additional evidence

---

[3]     Plaintiff challenges the Appeals Council's assertion that it "considered . . . the additional evidence . . .  He argues that the Appeals Council failed to carry out its duty to evaluate new and material evidence because it "did not provide any specific rationale underlying its rejection . . .  In Plaintiff's view, the Appeals Council failed to follow the law by completely disregarding these two submissions.  The Commissioner is correct, however that boilerplate and conclusory language from the Appeals Council is sufficient.  Both this Court and the Tenth Circuit have so held.  *See, e.g., Martinez v. Barnhart,* 444 F.3d 1201, 1207-08 (10th Cir. 2006); *Jordan v. Barnhart,* 213 Fed. Appx. 643, 646 (10th Cir. 2006); *Martinez v. Astrue,* CIV 06-1217 KBM (Doc. 16 at 4-7);

considered by the Appeals Council is part of the record that this Court considers in

reviewing the ALJ's decision.  *See, e.g., Hill v. Astrue,* 289 Fed. App'x 289, 293 (10th

Cir. 2008) ("The Appeals Council considered this new letter and made it part of

the record but stated that it did not provide a basis for changing the ALJ's decision.

. . . We must therefore consider the entire record, including Dr. Booth's letter, in

conducting our substantial evidence review.  *Martinez v. Barnhart,* 444 F.3d 1201,

1208 (10th Cir. 2006).").

## B.  *Treating Physician Rule Issues*

Plaintiff asserts that the ALJ erred in not giving controlling weight to D.O.

family practitioner Mark Evanko's February 2006 opinion and, instead, giving

"considerable weight" to the treating orthopedic consultants to whom Dr. Evanko

referred Plaintiff.  *See Doc. 16* at 16-20.  Ruybal also asserts that the ALJ's stated

---

*Doc. 17* at 6 (and authorities cited therein).  None of the cases
Plaintiff cites stands for the proposition that the use of boilerplate
or conclusory language by the Appeals Council is insufficient.  *See
Doc. 16* at 7-8.  Instead, they either address whether it is
appropriate for the <u>district court</u> to consider new evidence that the
Appeals Council had as part of the record when it reviews the
ALJ's decision, *O'Dell v. Shalala,* 44 F.3d 855, 858-59 (10th Cir.
1994), or discuss the <u>*ALJ's*</u> responsibility to give reasons for his or
her decision rather than just boilerplate phrases, *e.g., Langley v.
Barnhart,* 373 F.3d at 1119; *Barnett v. Apfel,* 231 F.3d 687, 689
(10th Cir. 2000); *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir.
1995).

*Orton v. Astrue,* CIV 07-0169 KBM (Doc. 19 at 15-16) (emphasis original).

reason for rejecting the opinion was due to the ALJ's failure to obtain Dr. Evanko's

medical records beyond 2004, her failure to recontact Dr. Evanko, and her

mischaracterization of the treating doctors' medical records.  None of these

arguments are availing.

1.  Duty To Develop Record/Recontact Dr. Evanko

While it is true that

> the ALJ has the duty to develop the record, such a duty
> does not permit a claimant, through counsel, to rest on
> the record - indeed, to exhort the ALJ that the case is
> ready for decision - and later fault the ALJ for not
> performing a more exhaustive investigation.  *See Branum,*
> 385 F.3d at 1271-72 (concluding that the ALJ
> satisfactorily developed the record when the claimant's
> "counsel did not indicate or suggest to the ALJ that any
> medical records were missing from the administrative
> record, nor did counsel ask for the ALJ's assistance in
> obtaining any additional medical records").  To do so
> would contravene the principle that the ALJ is not
> required to act as the claimant's advocate in order to
> meet his duty to develop the record.  *See Henrie,* 13 F.3d
> at 361.  This is especially true where, as here, neither
> counsel nor the claimant have obtained (or, so far as we
> can tell, tried to obtain) for themselves the records about
> which they now complain - suggesting that counsel has
> abandoned his role as advocate in favor of relegating that
> responsibility to the ALJ.  In short, we will not ordinarily
> reverse or remand for failure to develop the record when
> a claimant is represented by counsel who affirmatively
> submits to the ALJ that the record is complete.  This is
> particularly the case when the missing medical records
> are not obvious from the administrative record or

8

> otherwise brought to the attention of the ALJ.  Because
> the records' existence and significance were not brought
> to the attention of the ALJ and counsel affirmatively
> indicated the record was complete, the ALJ did not have
> a duty to obtain Dr. Kimball's records.

*Maes v. Astrue,* 522 F.3d 1093, 1097 (10th Cir. 2008) (footnote omitted).  I find

that there should be no different result under the circumstances of this case, simply

because Plaintiff was not represented by an licensed attorney at the ALJ hearing.

The person who represented Plaintiff was not merely a family member or

friend who attends the ALJ hearing, as is the case in some instances.  Rather, this

person was affiliated with the "Disability Advocacy Clinic" in Albuquerque, used

the organization's letterhead, and used a stamp bearing both her name and the

Clinic's name to gather and submit copious medical records going back as far as

1993.  At the hearing, the advocate made objections or lack thereof known, and

questioned the witnesses.  *See Record* at  197-286, 349-50, 357-68, 370.  The

advocate also referred the ALJ to an August 2004 "Functional Limitations and

Work Tolerance Checklist" by Dr. Evanko.  This document was contained in the

medical records marked "2F, page 3," which was admitted into the record.  *See id.*

at 130, 143, 350.  The advocate further submitted Dr. Evanko's "Social Security

Disability Questionnaire," which is dated February 13, 2006, and is part of exhibit

"9E." *See id.* at 2, 34, 130-33, 350.[4]  The advocate did not submit any updated

medical records from Dr. Evanko for 2005 or 2006, and when the ALJ asked

whether there were "[a]nymore records to come," the advocate replied "No, but . .

. the Claimant's getting ready [for] bilateral knee replacement."  *Id.* at 350.  Thus,

this advocate functioned in exactly the same way that attorneys have in these

proceedings.

I agree that the Tenth Circuit does not require Plaintiff to show what the

missing records contained in order to obtain a remand.  *See Maes,* 522 F.3d at 1097,

n.1  ("Other courts refuse to reverse or remand in such a case because the claimant

is unable to show how the failure to obtain the records was prejudicial. . . .  This

Circuit, however, has not grafted an element of prejudice onto the governing

analysis.").  But the spirit of the *Maes* decision counsels not to remand if an

attorney's actions before the ALJ do not indicate there is a reason to secure the

medical records of which he or she complains on appeal.  That principle should

apply here.

Moreover, once Plaintiff's present attorney was appointed, he secured

extensions and serially supplemented the record for Appeals Council review.

---

[4] Neither the 2004 or the 2006 forms bear a Social Security or other identifying form
number or designation, and it is unclear who drafted them for Dr. Evanko's responses.

There are many records that were submitted, but the only items from Dr. Evanko that counsel submitted were two "medical assessment of ability to work-related activities" – one for Plaintiff's mental limitations, and one for her physical limitations.  The forms are dated September 19, 2006, after Plaintiff's knee replacements and the opinion give less restrictive limits than those the ALJ considered.  *Id.* at 332.[5]  Counsel, just like the advocate, somehow communicated with Dr. Evanko or his office to secure the opinions submitted just before the hearing and the Appeals Council decision, but at the same time did not secure additional medical records from him.  Indeed, counsel has not even submitted those records to this Court.  Under these circumstances, counsel should not be permitted to secure a remand on the ground that the ALJ also failed to secure the medical records.

Moreover, consistent with 20 C.F.R. § 404.1512(e), the Tenth Circuit holds that if there is no duty to further develop the record where it is adequate to make a decision on disability.  Here the record contained not one but two opinions

---

[5] Dr. Evanko indicated that Plaintiff can occasionally lift less than ten pounds and frequently lift less than five pounds.  She can stand and walk less than two hours a day and sit for less than four hours a day.  Although she is limited in unspecified ways in pushing and pulling with her lower extremities, she is unlimited in manipulative functions with both arms and hands.  She can never kneel, stoop crouch or crawl due to her "total replacements knee surgeries" some six months earlier.  *Id.* at 332.

from Dr. Evanko covering the period from the alleged onset and just prior to the hearing, as well as the medical records from the orthopedic specialists to whom he referred Plaintiff covering the year prior to the hearing.  That is sufficient information for the ALJ to make her decision, particularly in the absence of counsel requesting the records be supplemented on appeal.  *E.g. Cowan v. Astrue,* 552 F.3d 1182, 1187-88 (10th Cir. 2008).  It is doubtful that Dr. Evanko's records for the same time frame that he had referred his patient to specialists would have added anything of significance for the ALJ to consider.  For these same reasons, there was no need for the ALJ to "recontact" Dr. Evanko.  *See, e.g., Doc. 16* at 22 (citing *Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004) and 20 C.F.R. § 404.1512(e)(1) – duty to recontact arises if evidence is inadequate to make disability determination).

### 2.  Orthopedists Were Treating Physicians

Plaintiff labels the orthopedic specialists (Dr. Anthony Pacelli and Dr. Keith Harvie) as "consultative" sources and their medical records as "consultative reports."  I do not believe that by this Plaintiff means to convey they are not her treating physicians.  Nevertheless, I will pause for comment for the sake of clarity.  Calling Drs. Pacelli and Harvie "consultative" is misleading in the context of the treating physician rule.

Under disability regulations nomenclature, "consultative" physicians are those hired by the Social Security Administration to examine a claimant and prepare a report. *See, e.g.,* 20 C.F.R. §§ 404.1517-404.1519, 404.1526(d); 404.1527(c)(3).  Conversely, "treating" physicians are doctors that a claimant sees on his or her own initiative. *E.g., id.,* §§ 404.1517, 404.1519h; 404.1527(b)(3), (d). The distinction is important because there is a hierarchy in evaluating medical sources and, with all things being equal, consultative examiner medical opinions are given less weight than treating physician opinions from a medical source that has a longer-standing relationship with the patient. *E.g., id.,* § 404.1527(d)(2); *see also, e.g., Hamlin v. Barnhart,* 365 F.3d 1208, 1219-20 & n.13 (10th Cir. 2004).

Also, Dr. Evanko did not simply ask the orthopedists to "consult" with him about Plaintiff's knees, he referred her to them for treatment since they were the specialists and surgeons with special expertise in that area.  In that instance, the Administration "generally give[s] more weight to the opinion of a specialist about medial issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R., § 404.1527(d)(5).

3.  ALJ Did Not Err In Giving Dr. Evanko's Opinion Limited Weight

Dr. Evanko's 2004 checklist provides that Plaintiff could engage in sedentary activity with her hands but cannot "work eight hours per day" or "six hours per

13

day" and should avoid most all of the other listed activities and some of the listed

working conditions.  *Record* at 143.  The ALJ did not mention this document in her

opinion, but I do not find that grounds to remand.  First, Plaintiff does not make

that argument.  Second, Dr. Evanko's 2004 opinion is consistent with the ALJ's

alternative finding that Plaintiff can perform sedentary work.[6]

Dr. Evanko's 2006 assessment was more restrictive and that is the one the

ALJ discussed.  There, Dr. Evanko indicated that Plaintiff was "significantly

limited" in walking, pushing, sitting, pulling, standing, lifting, and carrying, and she

should never lift any amount of weight.  *Record* at 130-31.  She could sit for two

hours in an eight-hour work day and stand and walk for zero.  *Id.* at 131.  She could

"occasionally" bend at the waist and reach above shoulder level, but "never" squat,

kneel, or crawl.  *Id.* at 13.  She could "occasionally" be exposed to noise an

vibration, but "never" to heights, moving machinery, marked temperature changes,

dust, fumes, gasses, or driving automobile equipment.  *Id.* at 132.  Conversely, she

---

[6] Specifically, Dr. Evanko indicated that Plaintiff should avoid:  prolonged walking and standing; jumping; running; bouncing; climbing; crawling; turning her lower body; stooping motions, other than bending at the waist; crouching, kneeling; reaching; lifting ten or more pounds; carrying; throwing; pushing; pulling; and handling.  She was also to avoid working in: cold; sudden temperature changes; high humidity; wetness; cramped quarters ("worsens arthritis"); and high places ("fall risk").  The Court copy does not show that Dr. Evanko wanted Plaintiff to avoid "balancing," but that seems inexplicable given his other responses, and may be a copying problem.  He indicated that the activities Plaintiff could do are lift less than ten pounds and work with her fingers while sitting for a prolonged period of time.  *Record* at 143.

was not limited in grasping, reaching, handling, and fine manipulation for either of her arms or hands.  *Id.* at 130-31.  He concluded that Plaintiff "is unable to use her lower extremities in any effective manner to be/remain employed."  *Id.* at 132. After the section that provides a comprehensive definition of sedentary work, he was of the opinion that Plaintiff "is unable to perform even sedentary work [due to] her condition," could be expected to be absent from work seven days in an average week, and would need to take unscheduled breaks to deal with her medical problems.  *Id.* at 133.

The ALJ did not give this opinion "controlling" weight:

> In evaluating this evidence, I afford only limited weight to Dr. Evanko's 2006 assessment.  First, it is not supported by other medical opinion of record or with the record as a whole.  Secondly, it is not consistent with Dr. Evanko's reported findings or supported by other objective medical evidence.  While objective evidence supports existence of severe knee impairments, clinical findings also verify far more strength, mobility and functioning than Dr. Evanko suggests.  Secondly (sic), I afford Dr. Evanko's opinion limited weight because whatever he relates about the claimant presumably changed a month later [from February 2006] with bilateral knee replacements.  Nothing has been provided since that point to indicate the claimant's status was not improved by the recommended surgery.

*Id.* at 19.

In giving the opinion "limited" weight, she discussed the medical records

15

from Plaintiff's orthopedic treating physicians from May 2004 to April 2005 that
showed severe degenerative changes in the knees.  Among other things, the ALJ
noted that Dr. Pacelli's May 2004 examination showed a "full range of motions of
both knees on flexion but not on extensions, a slow gait, a normal single leg stance,
but an abnormal single leg hop, popping and grinding in both knees, and no
tenderness to palpation in either knee except for the patella."  *Id.* at 18.  She also
noted that in April 2005, Dr. Harvie "found 5/5 strength in all extremities, full
range of motion of the hip and ankles, with limited flexion of the knees . . .
considered muscle tone to be 'fair,' but recommended the claimant lose weight and
consider bilateral total knee replacements."  *Id.* at 19.  She further noted that in
December 2005, Dr. Harvie noted the Plaintiff complained of "intolerable pain,
wrapping her knees with ACE bandages, but using no assistive device and reporting
that she was then working part-time."  *Id.*

     Plaintiff argues that because these observations by the orthopedists do not
contain any "articulation of specific functional work-related limitations," they
cannot be used to support the ALJ's reasons for "placing greater weight on this
evidence over that of long time treating physician, Dr. Evanko."  *Doc. 16* at 18.
Apparently, I assume Plaintiff is arguing that because these treating doctors did not
render "medical opinions," their observations cannot be considered.  I disagree.

A doctor need not fill out a "functional limitation/work restriction" form or write a "To Whom It May Concern" letter to qualify as a "medical opinion."  The regulations define a "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect *judgments about the nature and severity* of your impairment(s), including your symptoms, diagnosis and prognosis, *what you can still do* despite impairment(s), and your *physical* or mental *restrictions.*"  20 C.F.R. § 404.1527(a)(2) (emphasis added); *see also* 20 C.F.R. § 416.927(a)(2) (same).

The above observations Drs. Pacelli and Harvey made about Plaintiff's strength, gait, range of motion, and the like are statements about Plaintiff's physical restrictions in her lower extremities.[7]   And, even if the orthopedists' medical records do not qualify as "opinions," they do qualify as "factors . . . which tend to . . . contradict [Dr. Evanko's] opinion" on Plaintiff's limitations and were properly considered by the ALJ.  *See* 20 C.F.R. § 404.1527(d)(6).

The orthopedists' observations were not the only ones considered by the

---

[7]  *Compare Cowan v. Astrue,* 552 F.3d 1182, 1188-89 (10th Cir. 2008) ("On an insurance form dated September 30, 2003, Dr. Gietzen wrote in . . . 'PROGNOSIS/REMARKS' . . . had a stroke and I feel he may never return to work.' . . .  Dr. Gietzen's brief statement on the medical form was not a true medical opinion.  It did not contain Dr. Gietzen's judgment about the nature and severity of Mr. Cowan's physical limitations, or any information about what activities Mr. Cowan could still perform.").

ALJ.  For example, she noted that in June 2004, Dr. Evanko indicated Plaintiff was "hobbling" with crepitus in both knees.  In December 2004, he "again described the claimant's walk as 'hobbling,'" but the rest of his report was consistent with that of the specialists – it "listed findings as normal gait and station, normal muscle tone and strength, no restricted motion, and no inflammation of joints."  *Record* at 18. A February 2005 observation the consulting psychologist made was that while Plaintiff "indicated some difficulty getting up from a chair, she walked with an 'unremarkable' gait."  *Id.*  Plaintiff takes no issue with the ALJ's consideration of these medical observations.

That the ALJ could have been much more comprehensive in her discussion is not a basis for reversing the decision.  For the above reasons, as well as the reasons stated by the Commissioner, I find the ALJ's residual functional capacity finding is supported by substantial evidence, and I decline to remand because of any deficiency in opinion writing.  *See Doc. 17* at 18-20; *see also, e.g., Draper v. Barnhart,* 425 F.3d 1127, 1130 (8th Cir. 2005) ("'deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case'") (quoting *Reeder v. Apfel,* 214 F.3d 984, 988 (8th Cir. 2000).

### 4.  Vocational Expert

Because there is no basis for finding error in the weight assigned to Dr.

Evanko's mid-proceedings opinion, Plaintiff's argument that the ALJ erred in her

hypothetical to the VE by failing to incorporate all of Dr. Evanko's limitations is

without merit.  *See Doc. 16* at 26-27; *see also Barnett v. Apfel,* 231 F.3d 687, 690

(10th Cir. 2000) ("the hypothetical presented to the vocational expert was also

sufficient, in that it contained all of the limitations found to exist by the ALJ.  *See*

*Gay v. Sullivan,* 986 F.2d 1336, 1341 (10th Cir. 1993) (approving a hypothetical as

adequately reflecting the limitations found to exist by the ALJ)."); *Harring v.*

*Chater,* 1995 WL 689822 at * 2 (10th Cir. 1995) ("Because an ALJ is bound only by

vocational testimony regarding impairments he has accepted as true, he properly

disregarded the VE's opinion based on that hypothetical situation.  *See Gay* . . .

(hypothetical posed to VE need not include impairments not established by

evidence); *Talley,* 908 F.2d at 588 (VE's opinion not binding on ALJ where the

hypothetical is based in part on impairments the ALJ did not accept as true).").

## *C.  Credibility*

Plaintiff asserts that the ALJ erred in finding her testimony "partially

credible" because:  (1) the finding was "based primarily if not exclusively" on

Plaintiff's attempt "to do some work as a means of supporting her custodial grandchildren," when the record shows that she was unable to maintain this and other employment since 2005 because of her pain; *Doc. 16* at 23-25; (2) the decision does not "explain how she considered the claimant's testimony regarding her inability to maintain work despite her best effort," *id.* at 23; and (3) the decision is simply a "conclusion in the guise of findings," *id.* at 25.  I am unpersuaded.

In general, "the record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996).  ALJ Birge stated that she "considered all the evidence of record." *Record* at 18.  Unless the record demonstrates otherwise, the federal courts in this circuit will take an ALJ at his or her word when they state that they considered all of the evidence.[8]  Here, there is no reason to conclude otherwise as the ALJ's credibility decision was made in

---

[8] *See Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005) (Appeals Council declaration); *Flaherty v. Astrue,* 515 F.3d 1067, 1071 (10th Cir. 2007) (ALJ declaration); *Sandoval v. Barnhart,* 209 Fed. App'x 820, 823-24 (10th Cir. 2006) ("Admittedly, the ALJ did not specifically mention Ms. Sandoval's pain medications, the single epidural steroid injection she received in her lower back, or describe each and every medical contact.  He did, however, state that in addition to her testimony, he considered 'all of the evidence of record' and 'the evidence, as a whole.' . . . '[O]ur general practice ... is to take a lower tribunal at its word when it declares that it has considered a matter.'").

conjunction with her residual functional capacity findings, where she discussed

medical evidence, testimony, and a post-hearing letter from Plaintiff's sister. *See*

*Record* at 18-20.

ALJ Birge failed to mention the proper legal framework and factors to

consider in making a credibility determination, nor did she discuss Plaintiff's

medications as is typical in credibility determinations based on alleged disabling

pain. *See e.g., Branum v. Barnhart,* 385 F.3d 1268, 1273-74 (10th Cir. 2004); *Kepler*

*v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995).  However, although the Tenth Circuit

requires an "objectively reasonable explanation over mere intuition, [it does] not

reduce[] credibility evaluations to formulaic expressions" and it "'does not require a

formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth

the specific evidence he relies on in evaluating the claimant's credibility, the

dictates of *Kepler* are satisfied.'"  *White v. Barnhart,* 287 F.3d 903, 909 (10th Cir.

2001) (quoting *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000)); *see also*

*Griner v. Astrue,* 281 Fed. App'x 797, 801-802 (10th Cir. 2008) (same).

After discussing treating physician medical evidence, the interventions

recommended by them, and the weight afforded them, ALJ Birge reasoned:

> At the hearing, the claimant testified that she is currently
> raising two grandchildren who are six years old and six
> months old and that she was responsible for these

children "24-7."  She testified that her knees continue to swell and do not bend well and that she uses a cane or crutches to move around the house.  She said she spends much or most of her day reading or watching television. Having fully considered the claimant's testimony, I find it only partially credible.  First, the claimant's medical records do not support use of an assistive device.  More than one examining physician, in fact, has stated the claimant walked either with a normal or a "slow" gait. Secondly, despite the claimant's complaints of severe pain, she took on a job after the date she alleges total disability the very definitely required continued mobility of both lower extremities *and she maintained that job for 12 consecutive months.*  Despite complaints of knee pain for over 15 years, all of the claimant's work records indicate she has consistently accepted work that, according to the vocational expert who testified at hearing, requires a considerable amount of standing, walking, carrying, and stooping.  Thus, despite a well-documented history of knee pain, the claimant was able to perform rather strenuous work activity until January 2006.  Although I have found that the claimant's work in 2005 does not constitute substantial gainful activity, I note that the claimant was clearly able to perform basic work-related activities, such as sitting, standing, walking, lifting, and driving, at least on a half-time basis for an extended periods of time.  *While this is not evidence that the claimant is able to sustain a 40-hour workweek on a regular and continuing basis, it is evidence that contradicts many of the claimant's assertions of chronic, debilitating pain.*

*Record* at 19-20 (original emphasis omitted, and emphasis supplied).

Although the better practice would be for ALJ Birge to recite the applicable standard and to engage in a more thorough discussion, I cannot find her failure to

22

do so grounds for remand because I cannot characterize her decision as "cursory" or as "conclusion in the guise of findings." *E.g., Kepler,* 68 F.3d at 391 ("Though the ALJ listed some of these factors, he did not explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible."); *Pryce-Dawes v. Barnhart,* 166 Fed. App'x 348, 350 (10th Cir. 2006) (ALJ statements that he "'compared the claimant's subjective allegations with the medical evidence of record and finds that the allegations appear to be exaggerated'" and "'finds that the parts of the claimant's testimony are inconsistent with the claimant's record' . . . does not satisfy *Kepler.*").

Finally, ALJ Birge's use of Plaintiff's work attempts as part of her reasoning is not contrary to the regulations or Tenth Circuit caselaw. The current ruling governing credibility determinations specifically provides that "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record. The adjudicator must consider such factors as: . . . the individual's statements with other information in the case record, including . . . *efforts to work.*" *Social Security Ruling 96-7p,* 1996 WL 374186 at **5-6 (July 2, 1996) (emphasis added). I acknowledge that an observation in the Tenth Circuit's 1997 decision in *Hierstein* seems to suggest to

the contrary, but I do not find that decision controlling.[9]

First, the *Hierstein* observation is expressly dicta. Second, the decision fails to acknowledge Ruling 96-7p. Third, the cases it relies upon for the proposition are inapposite. The *Miller* decision involved work that occurred after a "finding of complete disability" and is it clear that the ALJ there used the work in his credibility decision.[10] The *Washington* and *Jozefowicz* decisions concern "substantial gainful activity" analysis, not credibility. [11] Fourth, other Tenth Circuit decisions and cases

_____

[9]  *See Hierstein v. Chater,* 1997 WL 158177 at *3 (10th Cir. 1997) ("While we need not express any final opinions on these matters . . . we do note that reliance on ineffectual job searches and abortive work attempts as evidence of non disability-suggested here by the ALJ's comment that even plaintiff's unsuccessful employment efforts "reflect negatively upon the claimant's general credibility," App. II at 68-is contrary to controlling law. *See, e.g., Miller,* 99 F.3d at 978; *Washington,*37 F.3d at 1442-43; *cf. Jozefowicz v. Heckler,* 811 F.2d 1352, 1357-58 (10th Cir. 1987). Indeed, the problems encountered by plaintiff in these attempts, particularly stress-related difficulties and personal conflict with supervisors, appear to reflect the real-world impact of his recognized psychological impairments.").

[10]  *Miller v. Chater,* 99 F.3d 972, 977-78 (10th Cir. 1996) ("Finally, we do not think that evidence of claimant's driving and employment can provide more than a 'scintilla' of support for the Secretary's determination that claimant retained sufficient RFC to perform other forms of work. Claimant's continued driving did not prevent the ALJ from finding complete disability as of January 1989, so it cannot coherently offer much support for the contention that claimant was not disabled. His brief employment at the University of Oklahoma occurred when he had already been determined to be disabled, so it too cannot lend substantial support to a contrary conclusion. Moreover, the record reveals that he was discharged from his employment for 'poor performance' rather than 'misconduct,' which, if anything, would seem to argue in favor of a finding of a disability.").

[11]  *See also Barraza v. Barnhart,* 2003 WL 1098841 at **2-3 (5th Cir. 2003) ("We do not agree that the ALJ improperly considered Barraza's unsuccessful work attempts in violation of Social Security Ruling 84-25. That ruling prevents an ALJ from considering unsuccessful work attempts as proof of an ability to perform gainful employment. It does not suggest that a claimant's attempts to do medium or light capacity work cannot call his statements of 'disabling

from other circuits expressly acknowledge that work efforts are a proper

consideration in the credibility analysis.[12]

---

pain' into question."); *Salter v. Barnhart*, 2003 WL 22114263 at **5-6  (N.D. Cal. 2003) ("Here, the ALJ noted that on several occasions following the alleged onset of his disability, Salter returned to work for several months at a time. . . .  Salter argues his attempts to return to work were inaccurately characterized . . . and should not have had a bearing on Salter's credibility. . . . To support his argument . . . Salter cites an administrative ruling that sets forth the type of unsuccessful work attempts that do not preclude a finding of disability.  *See* SSR 84-25, 1984 WL 49799 at *2.  The purpose of that ruling, however, is to describe situations in which a claimant's failed efforts to return to work would not be considered "substantial gainful activity" at the first step of the sequential evaluation.  *See id.* at *1. The ruling does not preclude consideration of such work to the extent it may bear on a claimant's credibility. In any event, the ALJ did not rely solely, or even primarily, on Salter's work history.").

[12]  *E.g., Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995) ("Social Security Ruling 88-13 [the predecessor to 96-7p] requires ALJs to 'investigate all avenues presented that relate to subjective complaints' of disabling pain, and lists a number of factors that should be considered. One factor is the claimant's prior work record. . . . Thus, the ALJ did not err in considering that plaintiff quit working several years before the alleged onset of her disability.  Nor did he place undue emphasis on this factor, but considered it as one of several factors bearing on plaintiff's credibility.  He considered that although plaintiff claimed her disability began in 1985 after an accident, hospital records show she responded to therapy at that time and did not seek treatment for complaints of neck and/or back pain in 1986 and 1987, and that although she claimed she exacerbated her back and neck pain in a fall in January 1992, she did not seek medical treatment for the resulting injuries until April 1992.  He also considered her use of medications and daily activities.  We conclude the ALJ properly considered plaintiff's work history and did not exhibit bias against her."); *Watson v. Barnhart*, 194 Fed. App'x 526, 531 (10th Cir. 2006) ("a lack of work history is one of many factors that an ALJ may consider in assessing credibility, *see* SSR 96-7p, 1996 WL 374186, at *5; *Bean* . . . ; *Schaal v. Apfel*, 134 F.3d 496, 502 (2nd Cir. 1998)."); *Yates v. Astrue*, 2009 WL 88558 at *5 (W.D. Okla. 2009) ("a Plaintiff's work history is certainly a factor for consideration in the assessment of credibility"); *see also, e.g., E.g., Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) ("'[a]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'  Working generally demonstrates an ability to perform a substantial gainful activity.  *See Naber v. Shalala*, 22 F.3d 186, 188-89 (8th Cir. 1994). Throughout Goff's claimed period of disability, the ALJ noted, Goff persistently worked as a part-time kitchen aide.  Goff was also able to vacuum, wash dishes, do laundry, cook, shop, drive, and walk. T hese inconsistencies between Goff's subjective complaints and her activities diminish her credibility.  *See Riggins v. Apfel*, 177 F.3d 689, 692 (8th Cir. 1999) (finding activities such as driving his children to work, driving his wife to school, shopping, visiting his mother, taking a break with his wife between classes, watching television, and playing cards were inconsistent with plaintiff's complaints of disabling pain)."); *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) ("In addition, Berger continued to work as a carpenter, albeit on a part-time basis.  Although the

Wherefore,

IT IS HEREBY ORDERED that Plaintiff's motion to reverse and remand

*(Doc. 15)* be DENIED.  A final order will enter concurrently herewith.



_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.

---

diminished number of hours per week indicated that Berger was not at his best, the fact that he could perform some work cuts against his claim that he was totally disabled.  So too do his statements regarding his non-work activities: four-hour drives, lawn mowing, cleaning out the garage, and light construction work indicate that Berger could perform sedentary work and was not rendered entirely immobile by his back pain."); *but see Meece v. Barnhart,* 192 Fed. App'x 456, 466-67 (6th Cir. 2006) ("Plaintiff's attempt to return to work despite his chronic neck pain and his chronic headaches is not inconsistent with Plaintiff's claim of disability.  Plaintiff testified that he returned to work as a truck driver from November 2002 to April 2003.  Plaintiff engaged in truck driving on a part time basis; as the ALJ noted, his activity fell under the threshold of substantial gainful activity. During this time, Plaintiff chose only to drive the short trucking runs.  Moreover, Plaintiff testified that after two weeks of truck driving, his pain began to progressively increase.  Plaintiff continued to work through the pain, until the pain reached such a level that he was forced to stop work. This case is therefore similar to *Wilcox v. Sullivan,* 917 F.2d 272 (6th Cir. 1990), where . . . this Court stated, "[The plaintiff] should not be penalized because he had the courage and determination to continue working despite his disabling condition."  *Id.* Similarly, Plaintiff's unsuccessful attempt to return to work may not be used as evidence that Plaintiff is not disabled. Like the *Wilcox* plaintiff, Plaintiff worked despite his disabling condition until he could no longer do so.  This fact does not serve as substantial evidence that undermines Plaintiff's credibility with respect to his complaint of disabling pain.").